IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 4:23-cv-1224 |
| | ) |
| v. | ) |
| | ) |
| **AGRIDIME LLC,** | ) |
| **JOSHUA LINK, and** | ) |
| **JED WOOD,** | ) |
| | ) |
| Defendants, | ) |

**PLAINTIFF'S MOTION FOR MONETARY REMEDIES AND ENTRY OF FINAL JUDGMENT AS TO DEFENDANT JOSHUA LINK AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................... iii

    I.  PROCEDURAL BACKGROUND ..................................................................... 1

    II.  FACTUAL SUMMARY .................................................................................... 3

    III. ARGUMENT ..................................................................................................... 4

        A.     The Court Should Order Link to Pay Disgorgement and Prejudgment Interest ............................................................................................................ 4

        B.     The Court Should Impose a Third Tier Civil Penalty Against Link ............................................................................................................ 9

        C.     Plaintiff Requests That the Court Enter the Proposed Final Judgment against Link ............................................................................................................ 11

    IV. CONCLUSION ................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Liu v. SEC*,
    591 U.S. 71 (2020) ................................................................................................. 4, 5

*SEC v. AMX, Int'l*,
    7 F.3d 71 (5th Cir. 1993) ............................................................................................ 5

*SEC v. First City Fin. Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989) ............................................................................. 5, 7

*SEC v. Greenview Inv. Partners, L.P.*,
    No. 3:18-CV-2349-G, 2020 WL 973750 (N.D. Tex. Jan. 2, 2020) ........................... 8

*SEC v. Gunn*,
    No. 3:08-CV-1013, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ......................... 8

*SEC v. Hallam*,
    42 F.4th 316 (5th Cir. 2022) ...................................................................................... 5

*SEC v. Helms*,
    No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ........ 5, 10

*SEC v. JT Wallenbrock & Assocs.*,
    440 F.3d 1109 (9th Cir. 2006) ................................................................................... 3

*SEC v. Kenton Capital, Ltd.*,
    69 F. Supp. 2d 1 (D.D.C. 1998) ................................................................................ 9

*SEC v. Kern*,
    425 F.3d 143 (2d Cir. 2005) .................................................................................... 10

*SEC v. Moran*,
    944 F. Supp. 286 (S.D.N.Y. 1996) ............................................................................ 9

*SEC v. Morris*,
    No. 3:20-CV-02958-B, 2022 WL 9497046 (N.D. Tex. Oct. 14, 2022) .................... 5

*SEC v. Offill*,
    No. 3:07-CV-1643-D, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) ...................... 10

*SEC v. Patel*,
    61 F.3d 137 (2d Cir. 1995) ..................................................................................... 5, 7

*SEC v. Reynolds*,
    No. 3:08-CV-0438-B, 2013 WL 3479825 (N.D. Tex. July 11, 2013) ...................... 3

*SEC v. Rockwell Energey of Tex., L.L.C.*,
  No. H-09-4080, 2012 WL 360191 (S.D. Tex. Feb. 1, 2012) .................................................. 5

*SEC v. Seghers*,
  298 F. App'x 319 (5th Cir. 2008) ........................................................................................... 7

*SEC v. United Energy Partners, Inc.*,
  88 F. App'x 744 (5th Cir. 2004) ............................................................................................. 8

*SEC v. Universal Express, Inc.*,
  646 F. Supp. 2d 552 (S.D.N.Y. 2009) .................................................................................. 10

*SEC v. Voight*,
  No. H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) ........................................ 5, 7

**Federal Statutes**

*Securities Act of 1933*

Section 20
  [15 U.S.C. § 77t] ..................................................................................................................... 9

*Securities Exchange Act of 1934*

Section 21
  [15 U.S.C. § 78u] ................................................................................................................ 4, 9

*Federal Rules of Civil Procedure*

Fed. R. Civ. P. 56 ......................................................................................................................... 3

**Other**

17 C.F.R. § 201.1001 ................................................................................................................... 9

26 U.S.C. § 6621 .......................................................................................................................... 8

Plaintiff Securities and Exchange Commission (the "SEC") submits this Motion for Monetary Remedies and Entry of Final Judgment as to Defendant Joshua Link ("Link"). For the reasons discussed below, the SEC respectfully requests that the Court enter the attached proposed Final Judgment, which (1) incorporates provisions of the Agreed Judgment the Court entered against Defendant Link on April 25, 2024 (doc. 92) and (2) orders Defendant Link to pay disgorgement of $3,106,957.09, prejudgment interest thereon of $693,251.87, and a civil penalty of $3,106,957.09.

Once final judgments awarding monetary remedies are entered against Defendants, any funds paid to the SEC in disgorgement and pre-judgment interest will be directed to Stephen Fahey, the receiver previously appointed by the Court in this matter (the "Receiver"), for distribution to harmed investors. If civil penalties are paid, the Commission will move to establish a fair fund and have the Receiver distribute the monies back to harmed investors.

## I.
## PROCEDURAL BACKGROUND

The Commission filed its Complaint in this action on December 11, 2023, alleging that Defendants Agridime LLC ("Agridime"), Link, and Jed Wood ("Wood") (collectively, "Defendants") raised more than $191 million in a Ponzi scheme related to the purchase and sale of cattle. *See* Doc. 1, Pl's Complaint.

Without denying the allegations in the Complaint, Wood and Link consented to the entry of Agreed Judgments, which, among other things: (a) permanently enjoin Wood and Link from future violations of the federal securities laws as alleged in the Complaint; (b) permanently bar each of them from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") or that is required to file reports pursuant to Exchange Act Section 15(d); (c) permanently enjoin

them from directly or indirectly, including, but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunctions do not prevent each of them from purchasing or selling securities for their own personal accounts; and (d) order Wood and Link to pay disgorgement, prejudgment interest, and civil penalties in amounts to be determined by the Court upon the Commission's motion. *See* Docs. 92-93, Agreed Judgments; *see also* Doc. 90, Ex. A, Link Consent; Doc. 90, Ex. B, Wood Consent.

In conjunction with this Motion, the SEC has also moved to enter a consent judgment against Agridime that (a) permanently enjoins the company from future violations of the federal securities laws as alleged in the Complaint and (b) orders Agridime to pay disgorgement of $102,936,904 and prejudgment interest of $17,310,965.30, which amounts shall be deemed satisfied by the Receiver's collection efforts.

The SEC has also moved in conjunction with this motion to enter a consent judgment against Wood that incorporates provisions of the judgment the Court entered on April 25, 2024 (doc. 93) and orders Wood to pay disgorgement of $1,959,309.67, prejudgment interest of $373,676.49, and a civil penalty of $236,451.

In light of the judgments previously entered by this Court, the only unresolved issue in this matter is the *amount* of disgorgement, prejudgment interest, and civil penalties to be ordered against Link. The Commission is accordingly filing this Motion to set the amount of disgorgement, prejudgment interest, and civil penalties. *See* Doc. 92, § VI. In connection with this Motion, Link is precluded from arguing that he did not violate the federal securities laws. Doc. 92, § VI. He also cannot challenge the validity of his Consent or the Agreed Judgment against him. *Id.* Indeed, pursuant to the Agreed Judgment, the allegations in the Complaint must

be accepted and deemed true for purposes of this Motion, and the Court may decide the Motion based on affidavits, declarations, excerpts of sworn deposition or investigative testimony, or other documentary evidence, without regard to the standards for summary judgment in Federal Rule of Civil Procedure 56(c).  Doc. 92, § VI; *see also SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1112 (9th Cir. 2006) (affirming district court's grant of disgorgement, prejudgment interest, and civil penalties where defendant previously consented to entry of permanent injunction and agreed not to contest or deny allegations in the SEC's complaint); *SEC v. Reynolds*, No. 3:08-CV-0438-B, 2013 WL 3479825, at *2 (N.D. Tex. July 11, 2013) (similar).

## II.
## FACTUAL SUMMARY

The SEC incorporates by reference the allegations in its Complaint as if fully set forth in this Motion.  The SEC specifically directs the Court to Paragraphs 1-4, 7-9, 15-41 of the Complaint in particular, which provide a brief summary of the SEC's case.  As detailed in those paragraphs:

- Between January 2021 and December 2023, Defendants raised over $191 million from approximately 2,100 investors through sales of securities in the form of "Cattle Contracts";

- Defendants solicited investor funds using misrepresentations and omissions, including promises that Agridime would sell investors cattle, and, after approximately one year, buy back the cattle for a guaranteed investment return. Agridime also told investors that it would use investor funds to purchase, feed, finish, process, and sell specific cattle and that the cattle would be fully insured. Contrary to these representations, however, Defendants diverted tens of millions of dollars in investor funds to make Ponzi payments to prior investors and to pay undisclosed sales commissions to Agridime salespeople;

- Defendants had investors sign "Cattle Contracts" that contained terms of the investment and identified the guaranteed returns to promised investors;

- By engaging in this conduct, the Defendants violated a number of provisions of the federal securities laws—including the registration and antifraud provisions.

*See* Doc. 1, Compl. ¶¶ 1-4, 15-41.

The Complaint further alleges that, throughout the scheme, Link acted with a high degree of scienter—knowingly or recklessly engaging in the fraudulent conduct. *See, e.g.*, Doc. 1, Compl. ¶¶ 3, 33-35, 37-41, 42-47. Specifically, the Complaint alleges that Defendants—and, in particular, Link—had been advised by multiple state authorities that the Cattle Contracts constituted securities, yet they continued to solicit and sell the Cattle Contracts, even after Link *personally* received cease-and-desist orders from authorities in Arizona and North Dakota. *Id.* ¶¶ 37-41. The Complaint also alleges that Defendants: (1) falsely promised guaranteed returns ranging from 15% to 32% on investments; (2) disseminated false and misleading information to investors urging them to invest in the Cattle Contracts when Defendants knew they were not using the funds to purchase the requisite amount of cattle to pay the company's obligations; and (3) failed to register Agridime's securities offerings with the Commission or any state regulator. *See generally* Doc. 1, Compl. ¶¶ 2-5, 18-19, 22-25, 27-29, 33-41. In short, Defendants engaged in an egregious fraud scheme.

### III.
### ARGUMENT

**A.    The Court Should Order Link to Pay Disgorgement and Prejudgment Interest.**

This Court may order disgorgement of a defendant's ill-gotten gains causally connected to his securities law violations. A disgorgement award "that does not exceed a wrongdoer's net profits and is awarded for victims" is permissible equitable relief under Section 21(d)(5) of the Exchange Act. *Liu v. SEC*, 591 U.S. 71, 74-75 (2020). Disgorgement is also authorized under amendments to the Exchange Act that Congress enacted after *Liu*. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."); 15 U.S.C.

§ 78u(d)(3)(A)(ii) (granting jurisdiction to "require disgorgement ... of any unjust enrichment by the person who received such unjust enrichment as a result of such violation."). The Fifth Circuit has stated that the new provisions "authorize legal 'disgorgement' apart from the equitable 'disgorgement' permitted by *Liu*." *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022). But the court also stated that the amendments "ratif[y] the pre-*Liu* disgorgement framework used by every circuit court of appeals." *Id.* at 338; *see also SEC v. Morris*, No. 3:20-CV-02958-B, 2022 WL 9497046, at *3-4 (N.D. Tex. Oct. 14, 2022) (discussing *Hallam*). In this case, any difference in approach between legal disgorgement and equitable disgorgement is immaterial.

The Court must order disgorgement "that does not exceed a wrongdoer's net profits" and excludes "legitimate expenses." *Hallam*, 42 F.4th at 342; *Liu*, 591 U.S. at 91-92. Such exclusions would include offsets for amounts repaid to investors. *SEC v. Rockwell Energy of Texas, LLC*, No. 1:09-CV-4080-H, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). The Court has broad discretion in determining the amount of disgorgement. *See, e.g.*, *SEC v. Helms*, No. 1:13-CV-01036, 2015 WL 5010298, *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)).

Once the Commission presents evidence reasonably approximating the amount of defendants' ill-gotten gains, the burden of proof shifts to defendants. *Hallam*, 42 F.4th at 342. Defendants are then obliged to show "a clear break in or considerable attenuation of the causal connection between the illegality and the ultimate profits." *Hallam*, 42 F.4th at 342. Any risk of uncertainty in calculating disgorgement falls on the wrongdoer whose illegal conduct created the uncertainty. *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995); *SEC v. Voight*, No. H-15-2218, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting *SEC v. First City Fin'l Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

As noted, Link has consented to the Court's Judgment ordering him to disgorge all ill-gotten proceeds and to pay prejudgment interest on that amount. Based on records the Commission obtained from Defendants and the banks where investor funds were deposited, the Commission has calculated Link's disgorgement to be $3,106,957.09. Ex. A, Declaration of Carol Stumbaugh ("Stumbaugh Decl.") ¶ 14. This disgorgement amount was calculated through a two-step process.

First, based upon a review of records the Commission obtained from Link and the banks where investor funds were deposited, the Commission determined Link's gross proceeds from the Agridime fraud scheme. *Id.* ¶¶ 4, 6-7. Agridime started receiving investor funds in January 2021. Doc. 1, Compl. ¶ 18. Between approximately January 2021 and December 2023, Defendants raised over $191 million from investors. *Id.*; *see also* doc. 110-1, Ahuja Decl. ¶ 26 (declaration of receiver's forensic accountant concluding that Defendants raised approximately $244 million from investors over course of fraudulent scheme). From these funds, Defendants paid themselves artificially high salaries, transferred large sums to their personal accounts or the accounts of their spouses, and paid for personal expenses. Ex. A, Stumbaugh Decl. ¶¶ 8-14. Link personally received—either in his own accounts or accounts in his wife's name—transfers or payments from Agridime totaling $3,748,254.12. *Id.* ¶¶ 9-10, 11, 13. This amount represents the gross proceeds Link received from the fraud scheme.

Second, the Commission applied reasonable deductions to Link's gross proceeds to account for "legitimate expenses," in accordance with *Liu*. The Commission deducted a $185,000 payment that Link made to the business for the purchase of sheep. Ex. A, Stumbaugh Decl. ¶ 12. After this Court appointed a Receiver, Link agreed to forfeit those sheep to the Receiver, and for any proceeds from their sale to be distributed to investors. *Id.* The

**MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENT
AS TO DEFENDANT JOSHUA LINK AND BRIEF IN SUPPORT**                                                                    Page 6

Commission therefore deducted Link's payment for the sheep from his overall disgorgement amount.[1] The Commission further reduced the disgorgement amount by subtracting a reasonable salary rate ($152,099.01 per year) for the approximately three years in which the fraud was ongoing. *Id.* ¶ 10. This salary rate was equal to the salary that Link was paid in the year prior to the initiation of the fraud scheme. *Id.* After Defendants started offering the Cattle Contracts to the public, Link and Wood raised their respective salaries significantly over the course of three years. *Id.* These raises would necessarily have come from investor funds because the business was not generating sufficient income to support these raises. *Id.* ¶¶ 6, 10. The Commission therefore only deducted a reasonable salary and seeks the remaining excess salary in disgorgement. Adjusting for these deductions, the total amount of ill-gotten gains Link received is $3,106,957.09. *Id.*

This amount is a reasonable approximation of Link's proceeds from the scheme. No affirmative evidence in the record disputes the reasonableness of this amount, and any risk of uncertainty should fall on Link, whose illegal conduct created the uncertainty. *Patel*, 61 F.3d at 140; *Voight*, 2021 WL 5181062, at *7 (quoting *First City Fin'l Corp.*, 890 F.2d at 1232).

|  | Link |
|---|---:|
| Excess Salary | $ 700,202.97 |
| Commission/Distributions | 2,435,192.48 |
| Debit Card Payments | 156,561.64 |
| **Total Improper Transfers** | $ 3,291,957.09 |

---

[1] Link made other payments to Agridime but, based on the records available to the Commission, these payments appeared to be Link and his wife's investments in Cattle Contracts for their own accounts. They received payments after these investments that appeared to be returns of principal plus interest. *See* Ex. A, Stumbaugh Decl. Ex. 2. Only one payment, made in August 2023, was not repaid. Regardless, a Defendant does not get credit for investing funds from a fraud scheme for his own account. *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008) ("If the Commission shows a causal relationship between the defendant's wrongdoing and the amount by which he was unjustly enriched, that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained. [. . .] A defendant is not immune from disgorgement merely because he has spent or lost the proceeds of his fraudulent scheme.").

| Deductions for funds returned to Agridime | (185,000.00) |
|---|---|
| **Ill-Gotten Net Profits** | $ 3,106,957.09 |

*Figure 1, Summary of Disgorgement Calculations*

Link has already agreed to pay prejudgment interest in his Consent and was ordered to pay the same in the Agreed Judgment. *See* Doc. 92, ¶ VI. Per the Agreed Judgment, prejudgment interest "shall be calculated from September 19, 2022, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." Doc. 92, ¶ VI. Courts add prejudgment interest to a disgorgement amount to prevent defendants from benefitting from the use of ill-gotten gains interest-free. *SEC v. Gunn*, No. 3:08-CV-1013, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010). The decision whether to award prejudgment interest is a matter of the district court's discretion. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004).

Here, Link wrongfully obtained illegal offering proceeds through his violations of the federal securities laws. He then proceeded to use and benefit from those funds, at the expense of investors, to prop up the Agridime Ponzi scheme, to pay for personal and business expenses, and to increase his own salary. Ex. A, Stumbaugh Decl. ¶¶ 8-14. For a defendant to enjoy the benefits of his ill-gotten gains offends basic principles of justice and equity. *SEC v. Greenview Inv. Partners, L.P.*, No. 3:18-CV-2349-G, 2020 WL 973750, at *3 (N.D. Tex. Jan. 2, 2020). The SEC requests that the Court apply the IRS's underpayment rate to the principal disgorgement amount above for the period from September 19, 2022 (as set forth in the Agreed Judgment) to July 31, 2025. This would result in prejudgment interest of $693,251.87 and a total disgorgement plus interest amount of $3,800,208.96 against Link. Ex. A, Stumbaugh Decl. ¶¶ 15-16.

**MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENT
AS TO DEFENDANT JOSHUA LINK AND BRIEF IN SUPPORT**                                                                             Page 8

|  | Link |
|---|---|
| Disgorgement | $ 3,106,957.09 |
| Interest | 693,251.87 |
| **Total** | $ 3,800,208.96 |

**B.     The Court Should Impose A Third Tier Civil Penalty Against Link.**

The Court is authorized to assess civil penalties pursuant to Section 20(d) of the Securities Act of 1933 (the "Securities Act") and Section 21(d) of the Exchange Act, which establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's conduct. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); *see also* 17 C.F.R. § 201.1001 (increasing statutory amounts to reflect inflation). Congress enacted these penalty provisions "to achieve the dual goals of punishment of the individual violator and deterrence of future violations." *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). A civil penalty is necessary because "disgorgement . . . does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud . . ." and ". . . is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator." *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996) (quoting H.R. Rep. No.101-616 (1990)).

The Court may impose a first-tier penalty for any violation of the Securities or Exchange Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). No showing of *scienter* is needed for the first tier. *Id.* Second tier penalties may be awarded upon a showing that the violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Finally, a third-tier penalty may be imposed upon a finding that the defendant's violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that "such violations directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons." *Id.* Under both the Securities Act and the

Exchange Act, the Court may impose the greater of (a) a statutorily prescribed amount for each violation or (b) the gross amount of pecuniary gain to such defendant as a result of the violation. *Id.*

Although the statutory tier determines the maximum penalty allowed per violation, the actual amount of the penalty to be imposed is left to the Court's discretion. *See SEC v. Kern*, 425 F.3d 143, 153 (2nd Cir. 2005); *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009). In determining the appropriate penalty, the Court should consider: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *Helms,* 2015 WL 5010298, at *21 (quoting *SEC v. Offill,* No. 3:07-CV-1643-D, 2012 WL 1138622, *3 (N.D. Tex. Apr. 5, 2012)).

Applying these factors here, third-tier penalties are appropriate against Link. Link's conduct was egregious. For over two years, he misled investor victims, falsely representing to multiple investors that their money would be used to purchase and raise cattle. Doc. 1, Compl. ¶¶ 2-3, 19-24, 33-36. Instead of using the funds as promised, however, Link and the other Defendants misappropriated investor funds and diverted them to make Ponzi payments and to pay undisclosed commissions. *Id.* ¶¶ 3, 28-36. Link personally received over $1 million in undisclosed commissions. *Id.* ¶ 30. He also acted with a high degree of scienter as he knowingly and actively deceived investors about Agridime's use of the funds by covering up shortfalls with Ponzi payments. *Id.* ¶¶ 27-29. Defendants had also been informed by at least two state authorities that they were offering unregistered securities. *Id.* ¶¶ 37-40. The state

authorities had gone so far as to order Link personally to cease and desist from selling these securities. *Id.* ¶¶ 38-39. Link and the other Defendants ignored these orders, however, and continued to sell Cattle Contracts to investors, including to investors within the states that issued the cease-and-desist orders. *Id.* ¶¶ 37-41. This conduct resulted in substantial losses to investors. *See* Doc. 110-1, Ahuja Decl. ¶ 26 (noting that over $140 million were paid out from investor funds as Ponzi payments rather than used to purchase cattle). Because each of these factors weighs in favor of a penalty, it is appropriate for the Court to impose significant penalties.[2]

Based on the foregoing, the SEC requests that the Court impose a civil penalty of $3,106,957.09, which is equal to Link's gross pecuniary gain. This penalty amount is appropriate and warranted because it is authorized by applicable statute, will serve to uphold the aims of the federal securities laws by punishing Link for his egregious misconduct, and will deter future harm to investors.

### C. Plaintiff Requests That the Court Enter the Proposed Final Judgment against Link.

Plaintiff requests that the Court enter the proposed Final Judgment, attached hereto, incorporating the previously agreed-upon and entered relief in the Agreed Judgment (doc. 92) and setting the proposed amounts of disgorgement, pre-judgment interest, and civil penalties.

## IV.
## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court: grant this motion, enter the proposed Final Judgment attached hereto as Exhibit B, and grant Plaintiff such further

---

[2] The SEC has no current information regarding Link's financial condition and is thus not able to evaluate the fifth factor.

**MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENT**
**AS TO DEFENDANT JOSHUA LINK AND BRIEF IN SUPPORT**                                                Page 11

relief as to which it may be entitled.

DATED: September 2, 2025             Respectfully submitted,

                                                UNITED STATES SECURITIES AND
                                                EXCHANGE COMMISSION

                                                */s/ Tyson M. Lies*
                                                Tyson M. Lies
                                                Texas Bar No. 24087927
                                                Matthew J. Gulde
                                                Illinois Bar No. 6272325
                                                United States Securities and
                                                Exchange Commission
                                                Burnett Plaza, Suite 1900
                                                801 Cherry Street, Unit 18
                                                Fort Worth, TX  76102
                                                Telephone:  (817) 978-1421 (Lies)
                                                Facsimile:  (817) 978-4927
                                                liest@sec.gov
                                                guldem@sec.gov

                                                *Attorney for Plaintiff*

## CERTIFICATE OF CONFERENCE

I affirm that on August 21 and 22, 2025, I communicated with counsel for the Receiver and Jed Wood, who confirmed they are not opposed to the relief requested within this motion. On August 22 and September 2, I also attempted to contact Joshua Link via telephone but he did not answer or respond.

                                                */s/Tyson M. Lies*
                                                Tyson M. Lies

## CERTIFICATE OF SERVICE

      I affirm that on September 2, 2025, I electronically filed the foregoing document with the Clerk of the Court for the Northern District of Texas, Fort Worth Division, and have served all parties in accordance with FED. R. CIV. P. 5(b)(2).

                                               *s/ Tyson M. Lies*