IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-1224-P |
| AGRIDIME LLC, JOSHUA LINK, and JED WOOD, | § § § § | |
| Defendants. | § | |

## RECEIVER STEVE FAHEY'S RESPONSE AND OBJECTION TO THE NORTH DAKOTA RANCHERS' MOTION FOR PAYMENT

COMES NOW, Steve Fahey, in his capacity as the Court-appointed Receiver ("Receiver") over the Estates of the Receivership Defendants,[1] by and through his counsel, hereby files this Response and Objection to the North Dakota Ranchers' Motion for Payment (ECF No. 173) ("Motion"), and would respectfully show the Court as follows:

### I. INTRODUCTION

For the second time in this Receivership, the North Dakota Ranchers[2] seek a premature determination that they have a superior claim to certain assets currently held by the Receivership.[3] By their most recent Motion, the North Dakota Ranchers now make three arguments, each in the alternative, that they claim require the "immediate" payment of between $2.3 million and $1.6 million from the Receivership (depending on the various argument presented). *See* ECF No. 173, ¶¶ 1, 5.

---

[1] "Receivership Defendants" are Agridime LLC ("Agridime"), Joshua Link, and Jed Wood. ECF No. 15, ¶¶ 1-2.
[2] The "North Dakota Ranchers" refers to Lance Lenton, Lonnie Jaeger, and Mario Ost.
[3] The Court previously denied the North Dakota Ranchers' Motion for Relief from Stay (ECF No. 63). ECF No. 95.

In general, they seek (1) full payment of the artificially high returns that otherwise would have been owed under certain cattle contracts they had with Agridime (while Agridime was engaged in the Ponzi scheme); (2) payment of the amounts deemed to be "apparently valid" under the Dealer Trust Act and/or the P&S Act; or (3) payment of the sales proceeds that are presently segregated and held by the Receiver pursuant to the Court's Order (ECF No. 95). For the reasons stated below, the Receiver opposes the relief sought in the Motion and respectfully requests that the Court deny the Motion.

## II. BACKGROUND

**A.     Agridime's Involvement in the Cattle Feeding Business and Its Subsequent Placement in Receivership.**

As the Court is well aware, the Receivership Defendants marketed and sold cattle contracts to investors under the guise that Agridime would purchase cattle and then raise and sell them at a higher, guaranteed price. Receivership Defendants marketed this scheme to investors with the promise of artificially high returns with little to no risk. As part of its scheme, the Receivership Defendants also engaged with individuals who actually owned cattle. In a similar vein as the investors, these cattle producers entered into contracts with Agridime wherein Agridime took possession of the cattle, engaged with third-party feed yards that fed those cattle until they reached a certain weight, at which time the cattle were sold and processed, with similar, artificially high returns being returned to the individuals who owned the cattle.

The underlying complaint was filed by the Securities and Exchange Commission (the "SEC") to halt the active Ponzi scheme perpetrated on investors by the Receivership Defendants. ECF No. 1. The SEC has alleged that the Receivership Defendants raised at least $191 million from more than 2,100 investors by selling investment contracts related to the purchase and sale of cattle. *Id.*, ¶ 2. On December 11, 2023, the Court signed an Order Appointing Stephen P. Fahey as

Receiver over the Receivership Defendants (the "Order"). ECF No. 15. In response to the Receiver's well-supported motion, the Court has also made a finding that Agridime operated as a Ponzi scheme as of October 1, 2021. ECF No. 118.

**B.      Statutory Trust Claims made with the USDA.**

Following the placement of Agridime into the Receivership, certain individuals who had provided live cattle to Agridime under certain cattle contracts filed claims with the United States Department of Agriculture ("USDA") under the Packers and Stockyards Act of 1921 (the "P&S Act"). 7 U.S.C. §§ 181 – 229c. The P&S Act, which has been in place since the 1920s "to secure the free and unburdened flow of livestock across the nation from producers to consumers," requires that packers[4] hold assets in trust for the benefit of cash sellers in the event of non-payment by a packer. *United States v. Haun*, 124 F.3d 745, 748 (6th Cir. 1997). Specifically, between January and March of 2024, nine individuals filed a total of twenty-four claims under the P&S Act.

In addition, and apparently at the encouragement of USDA, these same individuals filed identical "Statutory Dealer Trust Claims" with the USDA under a new amendment to the Packers and Stockyards Act—the Dealer Trust Act—that was established for the benefit of unpaid cash sellers of livestock. 7 U.S.C. § 217b. The North Dakota Ranchers ostensibly filed their Dealer Trust Claims only "[a]fter learning that the Court would not permit the North Dakota Ranchers to retain possession of the [cattle] at issue . . . ." ECF No. 174, ¶ 16. Similar to the P&S Act, the Dealer Trust Act requires a livestock dealer[5] to hold certain assets in trust for the benefit of unpaid sellers of livestock. Generally, if a dealer fails to pay sellers for livestock, the Dealer Trust Act is

---

[4]  A "packer" is statutorily defined as "any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce." 7 U.S.C. § 191.

[5]  A "dealer" is statutorily defined as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser." 7 U.S.C. § 201(d).

intended to enable the seller to receive payment through these trust assets. *Id*. § 217b(a)(1). Because the Dealer Trust Act is a new statute, enacted during the Biden administration as part of the massive Consolidated Appropriations Act passed in December 2020, there is no case law—let alone controlling case law—interpreting its relevant provisions.

Based on the Receiver's communications with representatives of the USDA, a total of $5,691,378.95 in P&S Act Claims and Dealer Trust Claims were made. The USDA subsequently made a non-binding determination that four claimants (totaling $1,943,550.01 in claims) had "Apparently Valid" claims under both statutes. The North Dakota Ranchers make up three of the four parties who have "Apparently Valid" claims per the USDA.[6] While the USDA has received and processed the filed claims in this matter, its analysis is not a final agency determination that the Receiver can rely on as a binding decision that would otherwise require him to pay the amounts that USDA has tentatively termed as "Apparently Valid."

C.  **North Dakota Ranchers File Their Motion, Seeking Immediate Payment of Proceeds from Cattle.**

By their Motion, the North Dakota Ranchers, in the alternative, seek (1) full payment that otherwise would have been owed under the cattle contracts; (2) payment of the amounts deemed to be apparently valid under the Dealer Trust Act and/or the P&S Act; or (3) payment of the sales proceeds that are presently segregated and held by the Receiver pursuant to the Court's Order (ECF No. 95). ECF No. 173, ¶ 5.

---

[6] Chad Lorson is the only USDA Statutory Claimant with an "Apparently Valid Claim" who is not presently represented by legal counsel; however, Counsel for the Receiver has been in communication with Mr. Lorson regarding his claim and the status of the Receivership.

## III. ARGUMENT & AUTHORITIES

**A.     The North Dakota Ranchers' Request is Premature.**

Regarding the North Dakota Ranchers' requests for immediate payment of either (1) the artificially high returns that they claim would have been owed under the cattle contracts with Agridime, or (2) payment of the sales proceeds that are presently segregated and held by the Receiver pursuant to the Court's Order, both are premature. For one, as evidenced by the use of over six pages of their Motion to address and/or combat competing claims that may be brought by feedyards,[7] significant fact issues exist regarding entitlement to those proceeds.

Moreover, the Motion essentially seeks to allow the North Dakota Ranchers to cut to the front of the line and receive their claimed funds (which the feedyards and other creditors will likely have competing claims regarding), before a final distribution plan is approved by this Court. Once the Receiver has completed his investigation and efforts to collect all recoverable assets of the Receivership, a distribution plan will be presented for final approval by this Court. Until that time, and because the Order does not allow the Receiver to make the demanded distribution, the Motion is premature and should be denied.

**B.     Receiver's Initial Position Regarding the USDA Statutory Claims.**

Since his appointment, the Receiver and his counsel have been in direct communication with representatives with USDA regarding the P&S Act and Dealer Trust claims that were filed with the USDA. While the USDA has received and processed the filed claims in this matter, its analysis is not a final agency determination that the Receiver can rely on as a binding decision that

---

[7] The feedyards (Cattle Empire, LLC and Brookover Feed Yards, Inc.) where the cattle at issue (and subsequent proceeds of those cattle) were fed have previously filed a motion for relief related to claimed superior lien positions regarding these proceeds. *See* ECF No. 107. The feedyards have since filed their response to the Motion and their First Amended Cross-Motion for Summary Declaration of Priority. ECF No. 189.

would otherwise require him to pay the amounts that USDA has tentatively termed as "Apparently Valid."

Considering the non-binding weight of the USDA's initial conclusion, along with the Receiver's duty to all of the creditors in the Receivership, the Receiver intends to provide the Court with his independent analysis of the validity, if any, of the USDA Statutory Trust claims filed, as part of the distribution plan that will be presented for final approval by this Court. However, based on his initial review of the claims materials provided by the USDA, and considering the facts regarding the cattle feeding enterprise that Agridime facilitated as part of its Ponzi scheme, Agridime's questionable status as a "packer" or a "dealer" as defined by the statutes, the mechanics behind how the purported "sales" took place, and how the Dealer Trust Claims were made,[8] the Receiver is presently highly skeptical regarding the validity of any of the USDA Statutory Claims.

Moreover, even if the North Dakota Ranchers have valid Statutory Trust Claims, which the Receiver may contest (as detailed above), until there is a final adjudication of that issue by this Court, nothing requires that those funds be paid at this time.

## IV. PRAYER

Accordingly, Receiver respectfully requests that the Court deny, without prejudice, the North Dakota Ranchers' Motion for Payment (ECF No. 173), and for all further relief at law and in equity to which Receiver may be justly entitled.

---

[8] The North Dakota Ranchers state in their Motion to that they made their Statutory Dealer Trust claim only "[a]fter learning that the Court would not permit the North Dakota Ranchers to retain possession of the [cattle] at issue…." ECF No. 174, ¶ 16.

Dated: September 26, 2025.                    Respectfully submitted,

                                                                               */s/ Colin P. Benton*
Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
Kyle K. Weldon
State Bar No. 24097192
kyle.weldon@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:	(817) 332-7788
Fax:	(817) 332-7789

-and-

John F. Massouh
State Bar No. 24026866
john.massouh@sprouselaw.com

**SPROUSE SHRADER SMITH PLLC**
P.O. Box 15008
Amarillo, Texas 79105
Telephone:	(806) 468-3300
Fax:	(806) 373-3454

**ATTORNEYS FOR STEVE FAHEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR AGRIDIME LLC**

## CERTIFICATE OF SERVICE

     This is to certify that on September 26, 2025, a true and correct copy of the foregoing document was filed and served in accordance with the Federal Rules of Civil Procedure via the CM/ECF filing system on all counsel of record.

                                                */s/ Colin P. Benton*
                                                Colin P. Benton